Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| María Luisa Marrero Cruz<br><br>Apelante<br><br>v<br><br>Carmen Judith Ramos González<br><br>Apelada | TA2025AP00232 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Lares<br><br>Caso Núm. LR2024CV00130<br><br>Sobre: Cobro de dinero ordinario |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Pagán Ocasio, y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de septiembre de 2025.

### I.

El 13 de agosto de 2025, María Luisa Marrero Cruz (señora Marrero Cruz o apelante) presentó digitalmente un recurso de *Apelación* en el que nos solicitó que revoquemos una *Sentencia* emitida el 27 de junio de 2025 por el Tribunal de Primera Instancia, Sala Superior de Lares (TPI o foro primario), notificada y archivada digitalmente en autos el mismo día.[1] Mediante dicho dictamen, el TPI declaró No Ha Lugar la *Moción de Sentencia Sumaria* radicada por la apelante y Ha Lugar la *Oposición a Moción de Sentencia Sumaria* presentada por la señora Carmen Judith Ramos González (señora Ramos González o apelada). Consecuentemente, desestimó la *Demanda* por la vía sumaria. Además, le impuso el pago de tres mil dólares ($3,000.00) de honorarios a favor de la parte demandada por temeridad.

---

[1] Véase la Entrada Núm. 28 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Caso del TPI (SUMAC-TPI).

El 19 de agosto de 2025, emitimos una *Resolución* en la que concedimos a la señora Ramos González hasta el 12 de septiembre de 2025 para presentar su alegato en oposición.

El 11 de septiembre de 2025, la señora Ramos González presentó un *Alegato en oposición de la parte apelada Carmen Judith Ramos González* en el que solicitó que confirmemos la sentencia apelada, por entender que no se cometieron los errores señalados.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso y, en adelante, pormenorizamos los hechos procesales más relevantes del caso.

**II.**

El caso de marras tuvo su génesis el 21 de mayo de 2024, cuando la señora Marrero Cruz presentó una *Demanda* sobre cobro de dinero en contra de la señora Ramos González.[2] En esta, alegó que la apelada contrató los servicios de la apelante para que le gestionara la solicitud de los programas de ayuda: "Emergency Relief Program (ERP)" y "Pandemic Assistance Revenue Program (PARP)". Según indicó, la apelada aceptó y firmó una carta de compromiso de pago, aceptando el pago de $400.00 de depósito por cada programa, siendo un total de $800.00, cantidad que entregó ese mismo día a la apelante. Alegó que, luego del desembolso, quedaba pendiente el pago del 7% de dicha cantidad recibida de ambos programas de ayuda, por ciento al cual se le acreditaría la cantidad del depósito.

La apelante señaló que las ayudas fueron aprobadas y desembolsadas a la apelada pero que esta última no cumplió con el pago de los servicios según fue pactado a pesar de las gestiones extrajudiciales de cobro que resultaron infructuosas. Así las cosas, solicitó que se ordene el pago del 7% de los servicios ofrecidos junto

---

[2] Véase Entrada Núm. 1 del expediente digital del caso en SUMAC-TPI.

al pago de una suma razonable por concepto de honorarios de abogado.

Por su parte, el 19 de septiembre de 2024, la señora Ramos González presentó una *Contestación a demanda.*[3] En esta, alegó afirmativamente que la apelante, en todo momento, le manifestó y representó a la apelada que el costo total por los servicios sería el pago de $400.00 por cada solicitud para un total de $800.00, cantidad que pagó. Por su parte, arguyó que la apelada no le orientó sobre la existencia de una compensación contingente a la cantidad que finalmente obtuviera de ambos programas. Por ello, adujo que no existe deuda alguna entre las partes o que la misma no es líquida ni exigible.

Luego de varios trámites procesales, el 27 de marzo de 2025, la apelante presentó una *Moción de sentencia sumaria* mediante la cual alegó la inexistencia de controversias de hechos que permiten la disposición del pleito de forma sumaria.[4] Alegó que la apelada, sin fundamento jurídico, pretende liberarse de las obligaciones contractuales con las que se obligó y, que, mediante conducta temeraria, le ha provocado daños por dicho incumplimiento.

Según expuso, la controversia se limitaba a determinar si procedía el pago de $13,472.34 a su favor por concepto de servicios prestados en virtud de un contrato entre las partes. Esta sostuvo que de la prueba documental surge que las partes se reunieron en varias ocasiones para discutir los trabajos para gestionar las antedichas solicitudes, los requisitos de los programas y los términos y condiciones del acuerdo transaccional. Entre esto, que la apelada debía pagar un depósito y que, según la misma apelada testificó bajo juramento, un depósito consistía en "separar algo". La apelante arguyó que el acuerdo contiene plasmado, de manera clara,

---

[3] Véase Entrada Núm. 7 del expediente digital del caso en SUMAC-TPI.
[4] Véase Entrada Núm. 23 del expediente del caso en SUMAC-TPI.

sus términos y condiciones. Por tales razones, solicitó que se ordene a la apelada su cumplimiento.

Por su parte, el 15 de abril de 2025, la apelada presentó una *Oposición a Moción de Sentencia Sumaria.*[5] En ella, planteó que existían controversias genuinas sobre hechos esenciales que deben ser ventiladas en un juicio plenario. La apelada arguyó que existía una controversia sustancial sobre la existencia y validez del consentimiento prestado por ésta al momento de firmar el documento contractual. Según alegó, su entendimiento fue que el costo por los servicios sería un pago fijo de $800.00 y que, de haber conocido que se le impondría un cargo adicional del 7% sobre las ayudas recibidas, no hubiera firmado. Adujo, además, que la apelante se negó a explicarle en qué consistía el 7% expresado en el documento. Ante esa situación, arguyó que hubo dolo en la contratación.

Por último, argumentó que, en la alternativa, el contrato resultaría nulo por ser contrario a la ley y orden público dado a que impone una compensación contingente sobre fondos provenientes de programas de ayuda federal. Por esas razones, argumentó que existían controversias genuinas sobre hechos esenciales y elementos subjetos de intención, conocimiento y credibilidad que debían ventilarse en un juicio.

Consecuentemente, el 27 de junio de 2025, el TPI emitió una *Sentencia* mediante la cual declaró Ha Lugar la *Oposición a Moción de Sentencia Sumaria* de la apelada y desestimó la *Demanda.*[6] En esta, formuló las siguientes determinaciones de hechos:

1. La Parte Demandante, María Luisa Marrero Cruz, es mayor de edad, soltera, agricultora/comerciante y vecina de Lares, Puerto Rico.
2. La Parte Demandada, Carmen Judith Ramos González, es mayor de edad, agricultora y vecina de Adjuntas, Puerto Rico.

---

[5] Véase Entrada Núm. 25 del expediente del caso en SUMAC-TPI.
[6] Véase Entrada Núm. 28 del expediente del caso en SUMAC-TPI.

3. La Parte Demandada es propietaria de una finca de doce (12) cuerdas de terreno, de las cuales ocho (8) están sembradas con café con fines comerciales.

4. La Parte Demandada lleva los libros de la operación comercial de dicha finca.

5. La Parte Demandada contrató los servicios de la Parte Demandante para que la asistiera con los trámites relacionados con la solicitud de las ayudas económicas de los programas federales conocidos como ERP y PARP.

6. La razón por la cual la Parte Demandada contrató los servicios de la Parte Demandante fue porque la Parte Demandada desconocía cómo solicitar dichos programas.

7. El 12 de julio de 2023, la Parte Demandante y la Parte Demandada firmaron un documento intitulado Carta de Compromiso de los Programas de USDA Department of Agriculture Farm Service Agency.

8. El contenido de dicha carta es el siguiente:

POR LA PRESENTE SE TRABAJARAN LOS PROGRAMAS EMERGENCY RELIEF PROGRAM PHASE 2 APPLICATION (ERP) AND, CONTINUATION SHEET FOR PANDEMIC ASSISTANCE REVENUE PROGRAM (PARP) ADJUSTED REVENUE.

La carta de compromiso de pago se basa en un depósito de $400 dólares por programa, el cual son dos programas, para un total de $800 dólares se pagarán al momento de la entrega de los documentos cumplimentados.

El pago de los programas se basa en el 7% del pago total de los dos programas. Al recibir el pago de los programas PARP y ERP, emitidos por la FSA el agricultor pasara (sic) a pagar el restante del pago del programa. El depósito de los $400, por cada ayuda se adjudicará de pago recibido por la agencia. Se restará el depósito de $800 del total del 7% de la ayuda.

Por la presente yo, María Luisa Marrero Cruz me relevo de toda responsabilidad, con la Agencia de USDA, FSA y se está cumplimentado (sic) los programas solo con información provista por el agricultor.

9. La Parte Demandada le pagó ochocientos dólares ($800.00) a la Parte Demandante por sus gestiones en el proceso de solicitud de los programas a beneficio de la Parte Demandada.

10. Luego de que la Parte Demandante le prestara sus servicios a la Parte Demandada, la Farm Service Agency aprobó las ayudas federales solicitadas.

11. El 22 de noviembre de 2023, la Parte Demandada recibió un pago total de ciento noventa y dos mil cuatrocientos sesenta y un dólares con noventa y siete centavos ($192,461.97) por el desembolso de las ayudas económicas solicitadas.

12. El cálculo de pago de los fondos provenientes de ambos programas federales se basa en los documentos financieros, contratos de compra y venta y la documentación de capacidad de producción sometida por la persona solicitante.

13. Los fondos provenientes del programa ERP Phase 2 son administrados por la Farm Service Agency y están

dirigidos a compensar las pérdidas agrícolas causadas por los desastres naturales que ocurrieron específicamente durante los años 2020 y 2021.

14. Los fondos provenientes del programa PARP son administrados por la Farm Service Agency y están destinados a aliviar las pérdidas de ingresos de los productores agrícolas elegibles relacionadas con la pandemia del COVID-19 durante el año 2020.

15. La Parte Demandada afirmó que los fondos provenientes de ambos programas federales se le proveyeron para invertirlo en levantar la finca, o sea, volver a sembrar, limpiar los caminos y "meter máquinas" y no para indemnizar los daños sufridos.

16. La Parte Demandada afirmó que gastó la totalidad del dinero desembolsado por ambos programas federales en la finca.

El TPI determinó que, por la ausencia de una disposición legal que legitime el pago de los servicios relacionados con la gestión de la solicitud, mediante un porcentaje de los fondos provenientes de los programas ERP y PARP, y dando por ciertos los hechos incontrovertidos en la *Oposición,* declaró la invalidez parcial de la carta de compromiso de pago respecto a la obligación del pago del 7% de la cantidad total que recibiera la apelada en virtud de dichos programas. Esto, porque tal pago compromete fondos federales que se desembolsaron con el propósito de proporcionarle un alivio económico a los agricultores para levantar su finca tras haberse visto afectados por desastres naturales o la pandemia de Covid-19. Con tal proceder, entendió innecesario discutir el planteamiento de vicios del consentimiento dado a que no existía una deuda válida, líquida y exigible sobre la cual no procedía una acción de cobro de dinero.  En consecuencia, desestimó la *Demanda* con la imposición de honorarios de abogado por temeridad.

Oportunamente, el 11 de julio de 2025, la apelante presentó una *Moción solicitando reconsideración* para que dejara sin efecto la *Sentencia.*[7]

---

[7] Véase Entrada Núm. 30 del expediente del caso en SUMAC-TPI.

Por su parte, el 22 de julio de 2025, la apelada presentó una *Oposición a solicitud de reconsideración* en la que sostuvo que el foro primario actuó correctamente y dentro de su discreción al declarar la nulidad del contrato por ser contrario al orden público.[8]

El 23 de julio de 2025, el TPI emitió una *Resolución* mediante la cual declaró No Ha Lugar la solicitud de reconsideración.[9]

Inconforme con la determinación del TPI, el 13 de agosto de 2025, la señora Marrero Cruz presentó ante nos la *Apelación* de epígrafe en la que formuló los siguientes señalamientos de error:

> **Primer error**: Erró el TPI quien dio como un hecho probado, que las partes habían firmado un contrato, conforme al cual, Ramos habría de adelantar $800.00 y que los honorarios totales de Marrero ascenderían al 7% de lo que obtuviese para Ramos, a los cuales se le descontaría el adelanto de $800.00. Luego, en su sentencia y contrario a lo antes expresado, el TPI estableció que los $800.00 equivaldrían al pago total al cual tiene derecho Marrero.
>
> **Segundo error**: Erró el TPI al entender que el contrato entre las partes era nulo.
>
> **Tercer error**: Erró el TPI, como cuestión de derecho al interpretar la doctrina de sentencia sumaria.
>
> **Cuarto error**: Erró el TPI al condenar a la parte demandada a satisfacer honorarios de abogado a la parte demandada.

Alegó que, contrario a lo que determinó el TPI, el contrato no era nulo porque hubo el consentimiento de la parte apelada y tiene derecho cobrar conforme al mismo. La apelante sostuvo que cumplió cabalmente con su obligación conforme al contrato entre las partes, pero que, la apelada se ha negado a satisfacer los honorarios convenidos por la labor de la apelante de gestionar las solicitudes de los programas ERP y PARP. Asimismo, manifestó que los hechos determinados justifican que se declare Ha Lugar la solicitud de sentencia sumaria a su favor. Aludió, además, a que la apelada no negó la firma del contrato ni que los beneficios que recibió fueron por gestión de otra persona. Por último, arguyó que el caso de

---

[8] Véase Entrada Núm. 33 del expediente del caso en SUMAC-TPI.
[9] Véase Entrada Núm. 34 del expediente del caso en SUMAC-TPI.

marras se trata de una cuestión novel por la cual no debió imputársele temeridad. Ante estos fundamentos, solicitó la revocación de la sentencia apelada para que, en su lugar, se declare Ha Lugar la *Demanda* condenando a la apelada al pago de $12,672.34, más las costas, gastos y una suma de honorarios no menor de $3,000.00.

Por su parte, el 11 de septiembre de 2025, la apelada presentó un *Alegato en oposición de la parte apelada Carmen Judith Ramos González*. En síntesis, arguyó que el TPI resolvió correctamente que, en ausencia de una disposición legal que autorice el pago de honorarios contingentes con fondos provenientes de los programas federales ERP y PARP, la cláusula contractual que imponía el pago del 7% sobre dichos fondos recibidos es nula. Esto, debido a que compromete los recursos desembolsados y cuyo propósito es brindar un alivio económico directo a los agricultores afectados. Señaló que el "Contracting Desk Book" del Departamento de Agricultura federal prohíbe los honorarios contingentes relacionados a la contratación con fondos federales. Asimismo, aludió que la legislación federal penaliza a cualquier persona que desvíe, utilice indebidamente o reciba comisiones no autorizadas sobre fondos federales asignados. También, mencionó que la Sección 10.24(b)(1) de la Circular 230 del Servicio de Impuestos Internos (IRS, por sus siglas en inglés) prohíbe que profesionales que representen a contribuyentes cobren honorarios contingentes.

También, la apelada alegó que existían controversias sobre la existencia y validez del consentimiento y, sobre si hubo o no información engañosa o incompleta que motivara la contratación, controversias sobre las que recaen elementos de intención y credibilidad que deben resolverse en un juicio en su fondo.

Por último, adujo que la apelante intenta escudarse bajo la alegación de que se trata de un asunto novel, para evitar la

imposición de honorarios. La apelada arguyó que fue inducida a error al momento de firmar un documento que era contrario a la ley, utilizando tácticas apresuradas y engañosas. Y, además, que no se trata de un incidente aislado sino un patrón de conducta por la apelante hacia otros agricultores. Por esas razones, solicitó que se confirme la *Sentencia* apelada.

Pormenorizado el trámite procesal pertinente a la controversia presentada por la *Apelación* de epígrafe, en adelante consignamos el derecho aplicable.

**III.**

**A.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, *supra,* R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. ***Rodríguez García v. UCA***, 200 DPR 929, 940 (2018); ***Bobé et al. v. UBS Financial Services***, 198 DPR 6, 20 (2017); ***SLG Zapata-Rivera v. J.F. Montalvo***, 189 DPR 414, 430 (2013). Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria sobre la totalidad de la reclamación o parte de esta. De esta forma, se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias cuando una audiencia formal resulta en una dilación innecesaria. ***Vera v. Dr. Bravo***, 161 DPR 308, 331-332 (2004).

Ahora bien, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. ***PFZ Props., Inc. v. Gen. Acc. Ins. Co.***, 136 DPR 881, 911-912 (1994). Asimismo, al evaluarse los

méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. ***León Torres v. Rivera Lebrón,*** 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. ***Meléndez González et al. v. M. Cuebas***, 193 DPR 100, 138 (2015); ***Ramos Pérez v. Univisión***, 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. ***Meléndez González et al. v. M. Cuebas***, supra, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. ***Ramos Pérez v. Univisión***, supra, pág. 213. La controversia sobre el hecho material debe ser real. Íd. A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. Íd., págs. 213-214, *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R.

Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. **Meléndez González et al. v. M. Cuebas**, supra. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. Íd., citando a **Ramos Pérez v. Univisión**, supra, pág. 214. De esta manera, central entre las responsabilidades de la parte promovida se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. **León Torres v. Rivera Lebrón,** supra. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa". Íd. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. **SLG Zapata-Rivera v. JF Montalvo**, supra; **Ramos Pérez v. Univisión**, supra, pág. 215; **Cruz Marcano v. Sánchez Tarazona**, 172 DPR 526, 550 (2007). Lo anterior, además, es cónsono con los requerimientos establecidos por las Reglas de Procedimiento Civil, *supra*, en lo pertinente a este mecanismo procesal. Entre estos, la Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b) dispone:

> (b) La contestación a la moción de sentencia sumaria deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente:
> (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;
> (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como

de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.

En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existan alegaciones afirmativas en la demanda sin refutar; (3) cuando surja de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no proceda como cuestión de derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

Entretanto, desde el punto de vista procesal, la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, impone que, si en virtud de una moción de sentencia sumaria no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y resulta necesario celebrar un juicio, entonces es obligatorio que el tribunal resuelva la moción realizando una determinación: (1) de los hechos esenciales y pertinentes sobre los que no hay controversia sustancial; (2) de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos; (3) de hasta qué extremo la cuantía de los daños u otra reparación no está en controversia; y (4) ordenando los procedimientos ulteriores que entienda justos, lo cual podría incluir una vista evidenciaria limitada a los asuntos en controversia. En dicho caso, al celebrarse el juicio se considerarán probados los hechos especificados, se procederá en conformidad y, a base de las determinaciones

realizadas en virtud de esta regla, se dictarán los remedios que correspondan, si alguno. Íd.

De otra parte, en **_Meléndez González et al. v. M. Cuebas_**, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una _de novo_ y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, _supra_, y los criterios que la jurisprudencia le exige al foro primario. **_Meléndez González et al. v. M. Cuebas_**, supra, pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, _supra_. Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, _supra_, R. 36.4. Íd.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el derecho. **Meléndez González et al. v. M. Cuebas**, supra, pág. 119.

### B.

De ordinario, en la reclamación sobre cobro de dinero, el demandante solo tiene que probar que: (1) existe una deuda válida; (2) la deuda no se ha pagado; (3) el demandante es el acreedor; y (4) la parte demandada es la deudora. **Gen. Elec. v. Concessionaries, Inc.,** 118 DPR 32, 43 (1986). En cuanto a la deuda, es necesario demostrar que la misma es líquida, vencida y exigible. **Ramos y otros v. Colón y otros**, 153 DPR 534, 546 (2001). Dentro de este marco, una deuda es líquida cuando la cantidad debida es cierta y determinada. Íd. Es decir, cuando se conoce la cuantía que se debe. Asimismo, es exigible y vencida cuando debe ser satisfecha por la naturaleza de la obligación o por requerimiento del acreedor. Véase **Guadalupe v. Rodríguez,** 70 DPR 958, 966 (1950).

### C.

El contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones. Artículo 1230 del Código Civil de 2020, 31 LPRA sec. 9751. En nuestra jurisdicción, se reconoce el principio de la autonomía contractual entre las partes contratantes, la cual concede una amplia libertad de acción a los particulares que desean obligarse. **Cruz, López v. Casa Bella y otros**, 213 DPR 980, 995 (2024). Esto les permite a las partes establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y el orden público. Artículo 1232 del Código Civil de 2020, *supra*, sec. 9753; **SLG Irizarry v. SLG García**, 155 DPR 713 (2001).

Para que un contrato sea válido, se requiere que concurran tres (3) elementos esenciales, a saber: (1) consentimiento de los contratantes, (2) objeto cierto que sea materia del contrato, y (3) la causa de la obligación que se establezca. Artículo 1237 del Código Civil de 2020, *supra*, sec. 9771; **Aponte Valentín v. Pfizer Pharmaceuticals, LLC**, 208 DPR 263, 284 (2021).

Mediante decisión judicial, se puede declarar la invalidez de un contrato, privando a un negocio jurídico de sus efectos propios por adolecer de un vicio originario, esencial o intrínseco al acto. Artículo 341 del Código Civil de 2020, *supra*, sec. 6311. La invalidez puede invocarse por vía de acción o defensa. *Íd.* Según establece el Artículo 342 del Código Civil de 2020, *supra*, sec. 6312, el negocio jurídico puede ser nulo o anulable. Es nulo: (a) si el objeto, la causa o el consentimiento son inexistentes; (b) si el objeto o la causa son ilícitos; (c) si carece de las formalidades exigidas por la ley para su validez; o (d) si es contrario a la ley imperativa, la moral o el orden público. *Íd.* Por otra parte, un negocio jurídico es anulable "si el otorgante tiene incapacidad de obrar, si concurre algún vicio de la voluntad, o si el acto adolece de un defecto de forma no solemne". *Íd.*

Los vicios de la voluntad son el error, el dolo, la violencia y la intimidación. Artículo 285 del Código Civil de 2020, *supra*, sec. 6191. En vista de ello, el negocio jurídico en el que medie un vicio de la voluntad es anulable si el vicio fue determinante para su otorgamiento. Artículo 286 del Código Civil de 2020, *supra*, sec. 6192.

La regla general sobre la interpretación de los contratos se fundamenta en que "si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas." Artículo 354 del Código Civil de

2020, *supra,* sec. 6342; ***Rivera v. Rivera***, 168 DPR 193, 212 (2006); ***Trinidad v. Chade***, 153 DPR 280, 289 (2001).

**D.**

El gobierno federal provee mediante los programas ERP y PARP asistencia económica a los agricultores afectados por desastres naturales y la pandemia de COVID-19, respectivamente. Los criterios y regulaciones del ERP se encuentran en el Titulo 7 del Código de Regulaciones Federales, 7 C.R.F. secs. 760.1900-760.1904, mientras que los criterios y regulaciones del PARP se encuentran en el 7 CRF secs. 9.301-9.310.

El programa ERP tiene como propósito proveer un pago a los productores agrícolas que sufrieron pérdidas de aquellos cultivos elegibles debido a los eventos de desastres calificados por el programa ocurridos en los años calendario 2020 y 2021. 7 C.F.R. sec. 760.1900. El límite de pago será determinado por el ingreso agrícola bruto ajustado de la persona solicitante. 7 C.R.F. sec. 760.1906.

De otro lado, el programa PARP responde a la pandemia de COVID-19, proveyendo apoyo a los productores elegibles de productos agrícolas que sufrieron una pérdida de ingresos elegibles en el año calendario 2020. 7 C.F.R. sec. 9.301. Para ambos programas de ayuda federal no se contempla en sus regulaciones la separación de una partida o el pago de honorarios contingentes para el caso en que la solicitud la tramitó un gestor.

Además, en atención al presente recurso, conviene mencionar, el "USDA Contracting Desk Book", v4.1, entre otras, proporciona al Departamento de Agricultura Federal regulaciones, políticas, procedimientos, guías e información para su personal.[10] En lo relativo a la presente controversia, la Subparte 403.405 de

---

[10] https://www.usda.gov/sites/default/files/documents/usda-contracting-deskbook.pdf

dicho manual sobre los honorarios contingentes provee para que, ante la sospecha de una tergiversación o violación a dicho pacto, reportarlo al oficial concerniente de la agencia, quien puede, si así lo determina necesario, referir el asunto al Departamento de Justicia federal.

Al igual, cabe destacar que la Carta Circular 230 del Servicio de Impuestos Internos, Sección 10.27, establece un profesional no podrá cobrar honorarios excesivos en concepto de asuntos ante sí. Incluso, salvo ciertas excepciones, impide el cobro de honoraros contingentes por un profesional.[11] Según los define, los honorarios contingentes comprenden "una tarifa que se basa en un porcentaje del reembolso informado en una declaración, que tiene como base un porcentaje de los impuestos ahorrados o que depende, de otro modo, del resultado específico obtenido". Íd.

**IV.**

En el caso de marras, la apelante nos plantea, en síntesis, que el TPI erró al declarar No Ha Lugar la *Moción de Sentencia Sumaria* y desestimar sumariamente la *Demanda*.

El TPI resolvió que no había disposición legal que legitimara el pago de los servicios realizados por la apelante para el trámite de la solicitud con un porcentaje de los fondos recibidos por la apelada provenientes de los programas ERP y PARP. Por esa razón, el foro primario declaró la invalidez parcial de la carta de compromiso de pago respecto a la obligación del pago de 7% del total que la apelada recibiera por desembolso de los programas, dado a que dicho pago, según pactado, compromete los fondos federales que se desembolsaron con el propósito de proporcionarle un alivio económico a los agricultores. En consecuencia, el foro primario

---

[11] https://www.irs.gov/pub/irs-pdf/pcir230s.pdf

declaró Ha Lugar la *Oposición* y desestimó la *Demanda* por la vía sumaria.

La señora Marrero Cruz arguyó que el TPI determinó como un hecho probado que las partes otorgaron un contrato en el que la señora Ramos González debía adelantar la cantidad de $800.00 y que el total a pagar por concepto de honorarios ascendería al 7% de la cantidad que la apelada recibiera de los fondos, pero que, en contradicción, el foro primario estableció que dicha cantidad de $800.00 constituyó el pago total al cual la apelante tiene derecho. Asimismo, nos planteó que erró el TPI al resolver que el contrato era nulo y en la imposición de honorarios de abogado por temeridad a la apelante. Esta sostiene que el contrato no adolece de nulidad alguna y que procede su cumplimiento.

En cambio, para la apelada, no se cometieron los primeros tres errores señalados porque el tribunal correctamente resolvió que el acuerdo que sirvió de fundamento para la reclamación del caso de epígrafe es nulo por infringir disposiciones federales que procuran asegurar la integridad y propósito exclusivo de los fondos federales. En la alternativa, sostuvo que el contrato es nulo porque hubo vicios en el consentimiento. Asimismo, arguyó que no se cometió el cuarto error señalado porque la práctica reiterada, abusiva y contraria al orden público por parte de la apelante justifica la imposición de los honorarios.

La apelada alegó que, debido a que los programas ERP y PARP están enmarcados en el ámbito federal, las restricciones de la Circular 230 del IRS aplican al caso de marras. También, aludió a que, el "Contracting Desk Book" del Departamento de Agricultura Federal (USDA) prohíbe y sanciona los honorarios contingentes. Por lo cual, sostuvo que el acuerdo es nulo e inexigible. La apelada alegó que, en la alternativa, el acuerdo es nulo porque su consentimiento estuvo viciado. Alegó que, la apelante la indujo a error porque en

todo momento le manifestó y representó que el costo total de los servicios sería el pago de $400.00 por cada solicitud, para un total de $800.00 y que confiando en eso, prestó su consentimiento puesto que no tenía conocimiento de que tenía que pagarle el 7% de la cantidad recibida. Manifestó que, al momento de la firma, la apelante le negó aclararle sus dudas expresándole que tenía prisa en irse.  Por ello, sostuvo que, su consentimiento estuvo viciado en torno a ese asunto.

Según ***Meléndez González et al. v. M. Cuebas***, supra, el primer paso del estándar de revisión de las solicitudes de sentencia sumaria es revisar el expediente *de novo* de la forma más favorable para la parte que se opuso a la solicitud de sentencia sumaria, y aplicar los mismos criterios de la Regla 36 de Procedimiento Civil, *supra*. De igual modo, el segundo pilar exige que revisemos que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. ***Meléndez González et al. v. M. Cuebas***, supra, pág. 118. De un pormenorizado estudio del expediente, determinamos que tanto la *Moción de Sentencia Sumaria* como su oposición, cumplieron con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. Por lo tanto, corresponde continuar al tercer criterio del aludido estándar de revisión apelativa sobre las solicitudes de sentencia sumaria.

El tercer paso conlleva revisar si en realidad existen hechos materiales en controversia. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, y exponer cuáles son los hechos materiales que están en controversia y cuáles son incontrovertidos. Luego una revisión exhaustiva del expediente, coincidimos con el foro primario en que no existen hechos en controversia.

No existiendo hechos en controversia, pasamos al cuarto y último eslabón; este es, debemos revisar de *novo* si el TPI aplicó

correctamente el derecho. *__Meléndez González et al. v. M. Cuebas__*, supra, pág. 119.

En particular, debemos resolver si la señora Ramos González le adeuda a la señora Marrero Cruz cantidad alguna por concepto de pago de los servicios ofrecidos mediante un contrato entre las partes para el trámite de unas solicitudes de fondos federales.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, resolvemos que el TPI no cometió los errores señalados, sino que actuó correctamente en derecho. Para el foro primario, la obligación de pago del 7% de los fondos desembolsados incluida en la carta de compromiso era inválida porque compromete fondos federales desembolsados con el propósito de proporcionarle un alivio económico a los agricultores.

En el presente caso, no existe duda de que las partes otorgaron un contrato para que la apelante gestionara el trámite de las solicitudes de ayuda federal para los programas ERP y PARP en beneficio de la apelada. Específicamente, las partes firmaron una Carta de Compromiso que establecía que la apelada pagaría un depósito de $400.00 por cada programa al momento de la entrega de los documentos y, que el pago por la solicitud a los programas de ayuda estaba basado en el 7% del total de los fondos desembolsados para dos programas, restándole la cantidad de $800.00 por concepto de depósito. Tampoco existe controversia sobre que la apelada hizo el pago inicial de $400.00 por cada solicitud, para un total de $800.00. Incluso, no existe controversia sobre que la apelada recibió el beneficio de las ayudas.

Sin embargo, la realidad fáctica es que la apelante incluyó en el contrato una cláusula que va en contra del ordenamiento jurídico dado a que promueve que parte de la asignación de fondos provenientes de los mencionados programas federales al solicitante se retengan para el pago por los servicios que originaron la solicitud

de estos. En el caso de marras, la carta de compromiso contempla un pago por servicios del 7% de la cantidad total recibida por ambos programas. A dicho pago total, se le descontaría la cantidad brindada como depósito, a saber, los $800.00 que la apelada pagó inicialmente.

Por todo lo anterior, corresponde confirmar la *Sentencia* apelada, toda vez que mediante la cláusula de pago en la Carta de Compromiso se pretende desvirtuar el propósito de los fondos federales provistos a los solicitantes, como en este caso a la apelada. Permitir que parte de dichos fondos se reserve para el pago de los servicios que promovieron las solicitudes menoscaba el beneficio mismo que estas pretenden proveer. Cónsono con lo anterior, en este caso, la apelada no tiene una causa de acción en cobro de dinero. Además, resulta forzoso concluir que la obstinación y actitud desprovista de fundamentos de la apelante en cobrar parte del dinero que recibe el solicitante en virtud de las ayudas económicas de fondos federales conlleva la imposición de costas, gastos y honorarios de abogado. Por ende, concluimos que el foro primario no erró al ordenar dicho pago por temeridad.

Como planteó la apelada, los programas de ayuda ERP y PARP provienen de legislación federal y, por ende, están sujetos a sus regulaciones. Obsérvese que el programa de PARP provee asistencia financiera <u>directa</u> a los productores agrícolas que sufrieron pérdidas debido al COVID-19.[12] Asimismo, el ERP brinda asistencia a los agricultores que sufrieron una pérdida de ingresos debido a gastos necesarios asociados con pérdidas de cultivos elegibles, debido a un evento de desastre calificado que ocurrió en el año 2020 o 2021.[13]

---

[12] Véase Anejo 2 de la Entrada Núm. 25 del expediente del caso en SUMAC-TPI. 7 C.F.R. sec. 9.301.
[13] Íd., Anejo 1. Véase, 7 C.F.R. sec. 760.1900.

Nótese que el propósito de ambos programas es proveer una ayuda directa a los solicitantes.

Por lo que el foro recurrido actuó conforme a derecho al desestimar la *Demanda.*

**V.**

Por los fundamentos expuestos, se confirma la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones